IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | No. 10 C 6145 |
| v. | ) ) | Judge Robert W. Gettleman |
| RICHARD DEAN CARTER, | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff United States Securities and Exchange Commission ("SEC") has filed a one-count first amended complaint against defendant Richard Dean Carter alleging that he violated section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5. Plaintiff seeks: 1) to enjoin defendant from further violations; 2) payment of a civil penalty; 3) an order barring defendant from participating in any offering of penny stock; 4) an order barring defendant from acting as an officer or director of any issuer that has a class of securities under Section 12 of the Exchange Act or that is required to file reports under Section 15(d) of the Exchange Act; and 5) any other equitable relief this court deems appropriate and necessary. Defendant has filed the instant motion to dismiss the complaint under Fed. R. Civ. P. 12 (b)(6) and 9(b). For the following reasons, the court denies defendant's motion.

## BACKGROUND

The following facts, which come from the amended complaint, are taken as true for purposes of the instant motion to dismiss. In February and March 2008, defendant was the President and CEO of High Velocity Alternative Energy Corporation ("High Velocity"), a publicly traded company that distributed petroleum products to the automotive and

manufacturing industries. In March 2008, High Velocity sent two separate press releases with the SEC (the first of which was attached to a Form 8-K), which announced two large contracts to supply automotive products. These contracts did not actually exist. The news of these contracts led High Velocity's stock price to increase over 100 percent and 25 percent on the two respective days following the announcement of the contracts.

The first of these press releases, on March 4, 2008, stated that High Velocity had signed a $30 million annual contract to supply Coolants Plus, Inc. with automotive products. This contract did not exist. High Velocity's stock price opened at $1.05 on March 4, reached $2.49 on March 5, and closed at $1.65 on March 6. Defendant attempted to sell shares of High Velocity stock on March 5 and March 6 after the price increases.

The second press release was issued on March 11, 2008, and announced that High Velocity had signed a $1 million contract to supply Master Price Distributors with automotive products. This contract also did not exist. Between March 11 and March 14, High Velocity's stock price increased from $1.15 to $1.45. Plaintiff does not allege that defendant sold or attempted to sell stock after the second press release.

The amended complaint also includes allegations regarding defendant's role in issuing these press releases. Plaintiff alleges that defendant told High Velocity's corporate attorney and a High Velocity director about the false contracts, and the corporate attorney and director then drafted the press releases based on the misleading information they received from defendant.[1] Defendant reviewed and approved of the press releases prior to their issuance. Defendant was listed on both press releases as High Velocity's contact person, the first press release contained a

---

[1]The amended complaint did not name the director or the corporate attorney.

quote attributed to defendant,[2] and defendant's electronic signature is included on the Form 8-K to which the March 4 press release was attached. Defendant was aware or was reckless in being unaware that these contracts did not exist.

## **DISCUSSION**

When ruling on a Rule 12(b)(6) motion, the court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. Sprint Spectrum L.P. v. City of Carmel, Indiana, 361 F.3d 998, 1001 (7th Cir. 2004). The complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds on which the claim rests. Id. The allegations must plausibly suggest that the plaintiff has a right to relief, raising the possibility above the "speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Defendant contends that the amended complaint fails to meet this standard because it does not adequately allege that defendant, rather than the corporate attorney and director, "made" the statements as required by the recent decision in Janus Capital Group, Inc., v. First Derivative Traders, 131 S.Ct. 2296 (June 13, 2011).[3] Defendant, however, has misapplied Janus.

Janus held that "[f]or purposes of Rule 10b-5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it." 131 S.Ct. at 2302. The Court narrowly defined "maker" in order to keep "narrow

---

[2]The quotation specifically reads: "This contract represents a major shift from being a small regional oil packaging company. High Velocity's model is to provide superior service in existing markets and leverage larger distributors for a national presence,' said Richard D. Carter, Chief Executive Officer of high Velocity Alternative Energy."

[3]After the instant motion was fully briefed, the Supreme Court issued its opinion in Janus, which the court granted defendant leave to cite as additional authority.

3

dimensions" on the implied private right of action under Rule 10b-5.[4] Id. at 2301-02. Since Janus, district courts have followed its dictates by looking to who had ultimate authority over a statement to determine its "maker." E.g., Hawaii Ironworkers Annuity Trust Fund v. Cole, No. 3:10CV371, 2011 WL 3862206, at *4 (N.D. Ohio, Sept. 1, 2011); In Re Merck & Co., Sec., Derivative & ERISA Litig., Nos. 05-1151, 05-2367, 2011 WL 3444199, at *26 (D.N.J. Aug. 8 2011). Essentially, Janus "restrict[s] liability for Rule 10b-5 claims against corporate officers to instances in which . . . those officers—as opposed to the corporation itself—had 'ultimate authority' over the statement." In Re Merck, 2011 WL 3444199, at *26.

Because the amended complaint states that defendant, in his capacity as CEO, approved the releases before they were made available to the public, plaintiff has sufficiently alleged that defendant had ultimate authority for the statements and "made" them for purposes of Janus. In analogizing to the difference between a speaker and his speechwriter, the Court reasoned that the speaker, not the speechwriter, "makes" the statement because he "takes credit, or blame, for what is ultimately said." Janus, 131 S.Ct. at 2302. Like a "speaker," defendant may not have authored the contents of the press releases but was made aware of them and knew that he would be held accountable. Thus, the allegation that defendant, as the company's CEO, approved the press releases is sufficient to make defendant the "speaker." The corporate attorney and the director are, in contrast, the "speechwriters," who wrote the releases (allegedly at defendant's instigation), but would not be blamed for their contents.

---

[4] Rule 10b-5 does not expressly create a private right of action, but the Court has implied one under §10(b). Janus, 131 S.Ct at 2301. The Court noted that "[c]oncerns with the judicial creation of a private cause of action caution against its expansion." Id. at 2302. Because the instant case is not a private action, such concerns do not apply here.

4

Similarly, the defendant in Merck was a high-ranking officer who, according to the court, "spoke" to the public by signing SEC forms and being quoted in articles and reports. In Re Merck, 2011 WL 3444199, at *26. The defendant attempted to "disavow liability for those statements as being under the ultimate authority of the corporation," id. (quoted in Hawaii Ironworkers Annuity Trust Fund, 2011 WL 3862206, at *4), an argument the court rejected as inconsistent with Janus. The court instead found that liability was appropriate because the defendant had made the statements in his capacity as Merck's Executive Vice President for Science and Technology and President of Merck Research Laboratories and "pursuant to his responsibility and authority to act as an agent of Merck." Id.

Further, additional indicia of "ultimate authority" exist for the March 4 press release. Like the defendant in Merck, defendant in the instant case signed an SEC form (a form 8-K) as high-ranking corporate officer (CEO). The defendant's electronic signature indicates that he "made" the statements therein. In addition, the quotation attributed to defendant in the first press release is a strong indicator that defendant "made" the statement regarding that false contract. Janus, 131 S.Ct. at 2302 ("[A]ttribution within a statement or implicit from surrounding circumstances is strong evidence that a statement was made by, and only by, the party to whom it is attributed."). Thus, the court finds that plaintiff has adequately alleged that defendant violated Rule 10-b, in light of the Supreme Court's holding in Janus.

In addition, defendant argues that plaintiff has failed to comply with Rule 9(b), under which fraud-related allegations must state "the circumstances constituting fraud . . . with particularity." Such allegations must include the same content as "the first paragraph of any newspaper story": "the who, what, when, where and how." DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir. 1990).

In moving to dismiss, defendant attempts to label plaintiff's complaint as insufficient under Rule 9(b) because it does not contain every specific piece of information regarding "the who, what, where, when and how" of the alleged fraud. But plaintiff need not specify every bit of information supporting its allegations. Rule 9(b)'s heightened pleading requirement is designed simply "to force the plaintiff to do more than the usual investigation before filing his complaint," and thereby to "assure that the charge of fraud is responsible and supported, rather than defamatory and extortionate." Ackerman v. Northwestern Mut. Life Ins. Co., 172 F.3d 467, 469 (7th Cir. 1999). The specificity of plaintiff's allegations indicates that it has performed the requisite pre-complaint investigation. Plaintiff's failure to allege additional details, which it might have pled in the instant complaint but which will undoubtedly be revealed through discovery, does not warrant dismissing the complaint.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is denied. Defendant is ordered to answer the complaint by December 28, 2011. The parties are directed to submit a joint status report using the court's form on or before January 3, 2012. This matter is set for a report on status on January 10, 2012.

**ENTER:  November 28, 2011**

_____
**Robert W. Gettleman**
**United States District Judge**